## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL LOWERY,    )
          )
   Plaintiff,    )
          )
   v.       )  **2:03cv1764**
          )  **Electronic Filing**
JO ANNE B. BARNHART,   )
COMMISSIONER OF SOCIAL  )
SECURITY,      )
          )
   Defendant.   )

September __, 2005    **MEMORANDUM OPINION**

### I. INTRODUCTION

  Plaintiff, Michael Lowery ("Plaintiff"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). 42 U. S. C. §§ 401-433, 1381-1383f.   The parties have filed cross motions for summary judgment, and the record has been developed at the administrative proceedings.

### II. PROCEDURAL HISTORY

  Plaintiff protectively filed application for DIB and SSI benefits on July 30, 2001, alleging disability since April 15, 2001, due to vision problems from diabetes, high blood pressure and fatigue. R. 99, 112, 279. Plaintiff's claim was initially denied, and he filed a timely request for a hearing. R. 17.  A hearing was held on September 18, 2002, in Pittsburgh, Pennsylvania before Administrative Law Judge Kenneth Andrews ("ALJ"). R. 35. Plaintiff was present and represented by counsel, and a vocational expert, Dr. Fred A. Monaco ("VE"), also appeared and testified. R. 17.  The ALJ issued an unfavorable decision on April 25, 2003,

finding that Plaintiff was disabled, but was not entitled to DIB or SSI because his substance abuse was material to the finding of disability, *i.e.* he would not be disabled if he stopped his substance abuse. R. 22. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. R. 6-8. The instant action now seeks review of the Commissioner's final decision, and the matter is before this Court on the cross-motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

## III. STATEMENT OF THE CASE

Plaintiff was born on January 25, 1955. R. 38. Plaintiff is a high school graduate, and has past work experience as an assembler. R. 39, 42. Plaintiff has a long history of substance abuse. R. 20. As early as 1992, Plaintiff was diagnosed with cocaine dependency. R. 154. In September of 1992, Plaintiff was hospitalized after a suicide attempt and diagnosed with cocaine dependency and diabetes mellitus. R. 152-157. In 2001, Plaintiff was hospitalized from August 13th to August 17th for depression. R. 164. Plaintiff was diagnosed with depression, hypertension and diabetes. R. 165. At the time of discharge, Carlos Placci, M.D. noted that Plaintiff was alert and oriented, was neither psychotic nor suicidal, had no cognitive deficits, and that his depression had lifted. R. 165. Plaintiff's prognosis was listed as fair. R. 165. During that same hospitalization, Plaintiff admitted to S. Dod. Harvinger, M.D. that he drank "a lot of alcohol," and can drink ten (10) to fifteen (15) cans of beer at one time. R. 167. Dr. Harvinger further noted that Plaintiff had been drinking since fifteen (15) years of age, and that he "snorts cocaine" and, in that past, had injected both heroin and cocaine. R. 167.

Gary R. Hess, O.D. examined Plaintiff on July 9, 2001, and found that plaintiff had mild preproliferative diabetic retinopathy. Dr. Hess reported that Plaintiff's prognosis was good as long as he controlled his diabetes. R. 163. In connection with his diabetes, Plaintiff was given a foot screening on July 17, 2001, which showed he had no loss of protective sensation.

R. 252.

On September 25, 2001, Marvin D. Wheeler, Ph.D., performed a clinical psychological disability evaluation as requested by the Commissioner. R. 185-190. Plaintiff admitted that he had been drug and alcohol dependent in the past, but denied any current use. R. 185. Plaintiff endorsed symptoms of depression and anxiety, and admitted to a low energy level, poor sleep, fatigue and difficulty with concentration. R. 186. Plaintiff denied any perceptual disturbances. His thought processes were slow and he provided minimal information. R. 186. Dr. Wheeler found that Plaintiff's continuity of thought was fair, he had no language impairment, and his insight was limited. R. 186-187.

Dr. Wheeler's diagnostic impressions included major depression, and anxiety disorder. R.188. Plaintiff's prognosis was listed as "fair" with continued treatment. R. 188. As a result of Plaintiff's depression, Dr. Wheeler noted that he would have difficulty sustaining attention to perform tasks and was not able to tolerate the stress and pressures of day to day work activities at that time. R. 188. Further, Dr. Wheeler noted that Plaintiff had poor to no ability to: (a) follow work rules; (b) relate to co-workers; (c) deal with the public; (d) deal with work stresses; (e) function independently, and (f) understand, remember and carry out complex job instructions. R. 189.

Plaintiff was examined by Sean Choi, M.D. on October 1, 2001. R. 191. Dr. Choi indicated that Plaintiff had a long history of mental depression with a drug addiction problem. R. 191. Plaintiff was taking Wellbutrin, but suffered from extreme nervousness, poor concentration and insomnia. R. 191. Dr. Choi diagnosed Plaintiff with diabetes mellitus with poor control, diabetic retinopathy, mental depression with a history of chemical dependency; and hypertension that was well controlled. R. 192. A state agency psychologist, Edward Zuckerman, Ph.D., reviewed Plaintiff's medical records in November of 2001, and completed a psychiatric review technique form and mental residual capacity assessment. R.195-212. Dr. Zuckerman assessed Plaintiff with mild to moderate functional limitations. R. 205.

3

In January of 2002, Plaintiff was admitted to UPMC-McKeesport with acute alcoholic intoxication and abdominal pains. R. 229. The attending physician, Shih Lo, M.D., noted that Plaintiff indicated he was "always borderline drunk." R. 230. Dr. Lo's impression of Plaintiff included acute pancreatitis and chronic alcohol use. R. 231. Thereafter, in March of 2002, Dr. Choi, in an employment assessment form, listed Plaintiff as temporarily disabled for a six (6) month period due to depression and alcoholism. R. 244.

From November 2001 until February 2002, Plaintiff was treated at the Mon Yough Substance Abuse Center. R. 258 -263. On November 5, 2001, Plaintiff reported to Khairul Alam, M.D., a psychiatrist, that he was actively using drugs in September when he was in McKeesport hospital. R. 263. Plaintiff also stated that he used both drugs and alcohol during the previous week. R. 263. Though Plaintiff missed appointments with his therapist on a few occasions, Dr. Alam found Plaintiff compliant with his medication and his therapy. R. 259-261. Plaintiff was discharged from the program in February of 2002. R.258. His prognosis at the time was considered "good" provided he followed through with his mental health treatment and his medications. R. 258.

On October 16, 2002, Plaintiff went to the UPMC-McKeesport emergency room suffering from depression and suicidal ideation. R. 277. Plaintiff appeared disheveled, and would not make eye contact. R. 275. Plaintiff reported that he had been using drugs and alcohol, and smoking, the evening before his admission. R. 277. Plaintiff was discharged on October 22, 2002, after responding well to his psychological treatment. R. 273. Dr. Placci noted that Plaintiff was alert, pleasant, well oriented, and neither depressed nor psychotic. R. 277. Dr. Placci's discharge diagnosis included nonpsychotic exacerbated depression and substance abuse, alcohol, marijuana and crack. R. 277. Plaintiff's prognosis was "fair" if he followed his discharge instructions. R. 277.

Based on the evidence of record and the testimony at the hearing, the ALJ concluded that Plaintiff had medically determinable severe impairments including: substance addiction

4

(drug and alcohol abuse) with panic disorder; hepititis C; diabetes mellitus type 2 with retinopathy and neuropathy; and, recurrent major depression. R. 19. The ALJ found Plaintiff's impairments severe enough to meet Listing 12.09 (Substance Addiction Disorders) of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. Plaintiff was, therefore, disabled under the Act. R. 27-28. The ALJ also found, however, that absent the substance abuse, Plaintiff would be capable of making a vocational adjustment to a significant number of jobs in the national economy. R. 28-29. Plaintiff's substance abuse was found to be a material contributing factor to the finding of disability. R. 29. Accordingly, the ALJ found that Plaintiff was not entitled to receive either DIB or SSI benefits under the Act. R. 29.

IV.   **STANDARD OF REVIEW**

Congress provides for judicial review of the Commissioner's decisions to deny a claimant's application for disability benefits. 42 U.S.C. § 405(g). Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based. The role of the district court is to determine whether there is substantial evidence to support the Commissioner's decision. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999); *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (*quoting Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971)).

In order to establish a disability under the Social Security Act, a claimant must demonstrate there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42

U.S.C. § 423(d)(1). A claimant is considered unable to engage in any substantial activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart v, Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Serious consideration must also be given by the ALJ to the claimant's subjective complaints of pain, even when those assertions are not confirmed fully by objective evidence. *See, Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993); *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986).

The Social Security Administration has promulgated regulations incorporating a sequential evaluation process for determining whether a claimant is under a disability. 20 C.F.R. § 404.1520; *Williams v. Sullivan*, 970 F.2d 1178, 1180 (3d Cir. 1992). In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 2290-91, 96 L. Ed. 2d 119 (1987). In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that his impairments are "severe", he is ineligible for disability benefits.

In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20

C.F.R. § 404.1520(d). If the claimant's impairment matches or is "equal" to one of the listed impairments, he or she qualifies for benefits without further inquiry. If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to his past relevant work. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).

If the claimant is unable to resume his former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity ("RFC")[1]. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled. *See Plummer v. Apfel*, 186 F.3d at 428; 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. *See Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).

In the case of an individual suffering from alcoholism or drug addiction, the Act additionally requires that "[a] n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). Under the Social Security

---

[1]  Residual functional capacity is defined as that which "an individual is still able to do despite the limitations caused by his or her impairments." *Burnett v. Commissioner of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (*citing Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)).

Administration's regulations[2], the "key factor" in determining whether a claimant's alcohol or drug abuse is a material contributing factor to the claimant's disability is "whether we would still find [the claimant] disabled if [he or she] stopped using drugs or alcohol." 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1).

The ALJ is to determine which of the claimant's physical and mental limitations would remain if the claimant stopped using drugs or alcohol, and then must determine whether any of the claimant's remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the ALJ determines that the remaining limitations would not be disabling, the ALJ must find that the claimant's "drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(b)(2)(I), 416.935(b)(2)(I). However, if the ALJ determines that the remaining limitations would be disabling, the ALJ must conclude that the claimant is "disabled independent of [his or her] drug addiction or alcoholism and ... [his or her] drug addiction or alcoholism is not a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

## V.   DISCUSSION

Plaintiff argues that there is insufficient evidence in the record to support the ALJ's determination that, but for Plaintiff's substance abuse, he would not be disabled. As noted above, the key inquiry in determining whether alcoholism was a "contributing factor material to the determination of disability" is whether the Plaintiff "would still [be] . . . disabled if [he] stopped using . . . drugs [and] alcohol." *See* 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). To meet this standard, the ALJ must identify at least some medical evidence supporting the conclusion that a claimant no longer would be disabled if he or she stopped drinking or taking

---

[2]    Regulations were promulgated under the Contract with America Advancement Act of 1996, Public Law 104-121 (hereinafter "P.L. 104-121 "). This statute effectively "barred the award of disability benefits based on alcoholism or drug addiction." *See Torres v. Chater*, 125 F.3d 166, 169 (3d Cir. 1997).

drugs. *See Sklenar v. Barnhart*, 195 F. Supp. 2d 696, 700 (W.D. Pa. 2002) *citing Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)(affirming ALJ's finding of non-disability under P.L. 104-121 based on "medical opinions" that claimant "appeared to be entirely normal when sober and did not have chronic physical impairments that would remain if he quit drinking"); *see also, e.g., Davis v. Apfel*, 1999 U.S. Dist. LEXIS 16381 (E.D. Pa. Oct. 25, 1999) (focusing on medical evidence and opinions in applying P.L. 104-121, and noting that on remand "it would be helpful to have the opinion of the [claimant's] treating physician").

In concluding Plaintiff's substance abuse was material to the determination of disability, the ALJ found, *inter alia*:

> After considering the entire record, the [ALJ] finds that[,] considering the limitations that remain if the Claimant stopped using alcohol and drugs[,] . . . the claimant would retain the [RFC] to perform light work . . . Also he would retain the [RFC] for work involving the performance of simple instructions and repetitive tasks, with the need to avoid changes in the work setting, decision making, working in close proximity to others and interaction with the public, jobs involving production, rate, and pace demands and intense supervision, requiring limited concentration, in a low stress environment. . . The above [RFC] assessment is based upon the conclusion that[,] if the claimant maintains sobriety, the remaining impairments would only result in "mild" restriction in activities of daily living. The [ALJ] finds that the claimant would have "mild" difficulties in maintaining social [functioning], even if he were not involved in the use of drugs or alcohol.

R. 24. The ALJ stated that "[a]ll episodes of psychiatric exacerbation are documented as occurring during times of substance abuse." R. 24. Further, the ALJ found that Plaintiff's depression responded "well to treatment" and caused "much less sever limitation" when he stopped the substance abuse after hospitalization or treatment. R. 24-25. Based on these broad assertions, the ALJ makes a quantum leap to the conclusion that "the limitations that preclude the claimant from performing work-related activities on a sustained basis, are materially related to substance abuse." R. 25. The ALJ, however, cites to no specific medical report to support his conclusion. Nor could he, as the record is devoid of medical or psychiatric evidence, or opinion, that directly addresses the issue regarding the impact sobriety would have on

9

Plaintiff's impairments.

In assessing the limitations that would remain if Plaintiff maintained sobriety, the ALJ made similar conclusions without basis in fact. Dr. Wheeler performed a clinical psychological disability evaluation of Plaintiff and found that Plaintiff's continuity of thought was fair, he had no language impairment, and his insight was limited. R. 186-187. Dr. Wheeler's diagnostic impressions included major depression, and anxiety disorder, but no mention of substance abuse. R.188. Further, Dr. Wheeler noted that, as a result of his depression, Plaintiff would have difficulty sustaining attention to perform tasks and would not be able to tolerate the stress and pressures of day to day work activities at that time. R. 188. Moreover, Dr. Wheeler noted that Plaintiff had poor to no ability to: (a) follow work rules; (b) relate to co-workers; (c) deal with the public; (d) deal with work stresses; (e) function independently, and (f) understand, remember and carry out complex job instructions. R. 189. Because the ALJ found Plaintiff's denial of the use of alcohol or drugs at the time of Dr. Wheeler's examination incredible, the ALJ stated "it is evident that the limitations that were assessed by Dr. Wheeler were largely related to substance abuse and accordingly cannot be considered in determining the claimant's eligibility for benefits." R. 25. Dr. Wheeler's findings are silent regarding the effects of Plaintiff's substance abuse on his impairments. Further, the findings say nothing about the impact of sobriety, either real or hypothetical, on Plaintiff's impairments.

Similarly, this Court can find no support for the ALJ's determination that Plaintiff's substance abuse was material to the determination of disability in the reports or evaluations of Dr. Choi, Dr. Alam or Dr. Placci. This Court has reviewed every medical report or evaluation in the record and can find nothing that sufficiently addresses whether Plaintiff would remain disabled if he stopped drinking and abusing drugs.

It is axiomatic that the ALJ may not rely on his lay opinions to the detriment of the opinions of duly qualified medical professionals. *See, e.g., Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000) ("an ALJ may not make speculative inferences from medical reports").

Moreover, in cases like this one, where a claimant's non-drug or alcohol-related limitations arise from depression or other "mental limitations," the need to rely on medical evidence as opposed to the ALJ's lay opinion is even greater. *Morales v. Apfel*, 225 F.3d at 319 ("the principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving . . . mental disability"). Therefore, it is appropriate to require medical evidence directly addressing the impact of a hypothetical or actual cessation of substance abuse on Plaintiff's impairments.

Because the ALJ failed to identify medical evidence supporting his finding that drug addiction and alcoholism were contributing factors material to the determination of Plaintiff's disability, his decision was not supported by substantial evidence. Accordingly, the case must be remanded for a supplemental hearing to determine the materiality of Plaintiff's alcohol and drug abuse under the applicable regulations.

The Plaintiff also questions who has the burden of proving the materiality of the substance abuse. In determining the proper burden, the United States District Court for the Western District of Pennsylvania found that the standards set forth in *Brown v. Apfel*, 192 F.3d 492 (5th Cir. 1999), were "well-reasoned," and should be applied upon remand in determination of the materiality issue. *See Sklenar v. Barnhart*, 195 F. Supp. 2d at 706. In *Brown*, the Court of Appeals for the Fifth Circuit concluded that there was insufficient evidence in the record to determine if the claimant's mental impairment would diminish if she stopped drinking. *Brown v. Apfel*, 192 F.3d at 499. In remanding the case, the court held that the claimant had the burden of proving that drug or alcohol addiction was not a contributing factor material to his or her disability. *Id.* at 498. The court further held that the claimant was required to "introduce evidence that . . . she would still be disabled . . . even if she stopped using . . . alcohol. Of course, the ALJ had the option of ordering a consultative examination to guide his determination on remand." *Id.*

This Court is also in agreement with the holding in *Brown*. The burden of proof in

11

Social Security administrative hearings rests predominantly with the claimant. Specifically, the claimant must show that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). This burden does not shift until the final step in the analysis. Because PL 104-121 is silent on the shifting of the burden, there is no reason to remove the burden of proving disability from the claimant. Moreover, the claimant is the party best suited to demonstrate whether he or she would be disabled in the absence of drug or alcohol addiction.

Accordingly, the instant action shall be remanded for the review of additional medical evidence regarding whether the Plaintiff would be disabled if he stopped abusing drugs and alcohol. On remand, the ALJ has the option of ordering a consultative examination or examinations in order to make a proper determination under the applicable five-step sequential disability evaluation. The Plaintiff shall be given reasonable opportunity to supplement the medical evidence to address the issues identified in this Opinion. The Court will again impress upon Plaintiff that the ultimate burden of proving that his drug and alcohol abuse was not a contributing factor material to his disability rests with him. *See Brown v. Apfel*, 192 F.3d at 498; *Sklenar v. Barnhart*, 195 F. Supp. 2d at 706.

## VI.   CONCLUSION

For the foregoing reasons, the Court finds that th edecision of the ALJ was not supported by substantial evidence. Accordingly, the case must bc remanded for a supplemental hearing to determine the materiality of Plaintiff's alcohol and drug abuse under the applicable regulations.  An appropriate order will follow.

_DSCercone_
David Stewart Cercone
United States District Judge

12

cc:    Gregory G. Paul, Esquire
Peirce, Raimond & Coulter, P.C.
2500 Gulf Tower
Pittsburgh, PA 15219

Jessica Lieber Smolar, AUSA